IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KIMBERLY VICTORIA JOHNSON,    :

    Plaintiff,              :

vs.                              :    CA 11-0348-C

MICHAEL J. ASTRUE,              :
Commissioner of Social Security,
                                 :
    Defendant.

# MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 19 & 20 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative

record, plaintiff's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying plaintiff benefits should be affirmed.[2]

Plaintiff alleges disability due to irritable bowel syndrome, depression, and pain. Inasmuch as this is a case in which the Appeals Council entered a corrective decision (Tr. 4-7), the corrective decision denying benefits is set out in its entirety as follows:

> The claimant asked the Appeals Council to review the Administrative Law Judge's decision dated April 22, 2009. The Administrative Law Judge found that the claimant was capable of performing her past relevant work and was therefore not disabled (Findings #5 and #6).
>
> On May 9, 2011, the Appeals Council notified the claimant and the representative that it had granted the request for review. In that notice, the Council proposed to issue a corrective decision finding that the claimant is not eligible for benefits under the Social Security Act under step 5 of the sequential evaluation process. The Council also notified the claimant and the representative that it would consider any comments or new and material evidence that the claimant or the representative submitted within 30 days from the date of the notice. No comments or additional evidence have been received.
>
> The Appeals Council has entered into the record the Council's notice of proposed action, which is listed in the Supplemental List of Exhibits attached to this decision.
>
> The Appeals Council adopts the Administrative Law Judge's statements regarding the pertinent provisions of the Social Security Act, Social Security Administrative Regulations, Social Security Rulings and

---

[1] The parties waived oral argument in this case. (Doc. 18; *see* Doc. 21.)

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 19 & 20 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable.

The regulations provide for a sequential evaluation process in determining whether a claimant is disabled (20 CFR 416.920). The Appeals Council agrees with the Administrative Law Judge's findings under steps 1, 2 and 3 of the sequential evaluation [process]; namely, that the claimant has not engaged in substantial gainful activity since March 22, 2007 and that the claimant has severe impairments, which do not meet or equal in severity an impairment in the Listing of Impairments. However, the Appeals Council does not agree with the Administrative Law Judge's finding that the claimant has a severe mental impairment or could perform her past relevant work as a food service worker and was therefore not disabled.

In his decision dated April 22, 2009, the Administrative Law Judge found that claimant's flat feet, anemia, obesity and situational depression were severe in combination only (Finding #2).

Due to the effects of these impairments, the Administrative Law Judge found that the claimant could perform a full range of medium work and could therefore perform her past relevant work, leading to a conclusion of "not disabled" (Findings #4, #5 and #6). However, claimant's past work never rose to the level of substantial gainful activity and cannot therefore be considered past relevant work (20 CFR 416.960(b)(1)). Claimant participated in work-study while in college from 2003 to 2005 and earned less than $3,000 in each year, well below the substantial gainful activity level requirement for those years. Claimant's other work in food service was performed for a few months in 2006 and 2007, but earnings for those periods (roughly $600 total) are also far below the level required for substantial gainful activity. Therefore, it was an error of law to find that the claimant could return to her past relevant work since, by definition, she had none.

Furthermore, as part of claimant's request for review, her attorney submitted contentions arguing that since the Administrative Law Judge found depression to be among claimant's severe impairments, he should have found corresponding non-exertional limitations in her residual functional capacity assessment (Rep[.] Brief p.2). Claimant's attorney also argued that the Administrative Law Judge did not comply with Social Security Ruling 96-8p by not including a function-by-function assessment of her abilities in the residual functional capacity set forth in the decision (Rep. Brief p.2).

With respect to the first contention, the Administrative Law Judge found that based on treatment notes from Pathways Professional Counseling (Exhibit 12F), claimant has "moderate" limitations in social functioning because she has difficulty getting along with her mother and husband (Decision, page 7). He also found that claimant has "moderate" limitations in sustaining concentration, persistence and pace because she is preoccupied with her medical concerns. (Decision, page 7). While records show that claimant and her husband were seeing a licensed marriage and family therapist at Pathways Professional Counseling, they do not show formal psychological assessments or treatment for a mental disorder. Rather, claimant and her husband were seen for six sessions, the last on August 28, 2008, for marriage counseling (Exhibit 12F/1). There are no other records in the file that relate to an alleged mental impairment. The record does not contain a psychological assessment or other evidence establishing that claimant has a medically determinable mental impairment. When claimant went for a physical consultative exam in August 2007, she did not mention depression and told the examiner that she had "no other problems other than foot pain" (Exhibit 3F/1). Claimant also denied mental health issues in her disability application. Additionally, after she started her sessions at Pathways (July 2007), claimant was contacted by the Social Security Administration on September 10, 2007, and stated that she had no mental issues; it was only the physical problem that kept her from working (Exhibit 9E). Accordingly, the Administrative Law Judge's finding of a severe medically determinable mental impairment is not supported by substantial evidence.

As to the second contention, although the decision on its face does not appear to provide a "function by function" assessment of claimant's residual functional capacity, by finding that she could perform the full range of medium work and citing 20 CFR 416.967(c), which clearly defines that term, the Administrative Law Judge satisfied the requirements of Social Security Ruling 96-8p. Furthermore, the evidence of record does not support limitations greater than those found by the Administrative Law Judge. While the record shows that claimant has sought medical treatment for a variety of health issues, clinical findings have generally been unremarkable (Exhibit 1F, 8F, 10F). As noted above, the record does not establish that claimant has a medically determinable mental impairment. In terms of her flat feet, the current record does not show that claimant was ever seen by a podiatrist. The only record regarding this alleged impairment is from Stephen West, M.D., a consultative examiner who evaluated claimant in August 2007 and stated that she had 5/5/ strength,

4

good range of motion, negative straight leg raise tests, could do heel toe maneuvers, fully squat and walk with a normal gait (Exhibit 3F). Based on his examination, Dr. West indicated that he did not see any "disabling factors" and did not recommend any functional limitations despite finding planter (sic) fasciitis bilaterally, hypertension and migraine headaches (Exhibit 3F/2). Finally, while the evidence reflects that claimant has sought treatment for abdominal pain, has been prescribed medications to treat nausea and acid reflux, and has been found to have irritable bowel syndrome, they do not show that claimant has significant limitations as a result of these conditions (Exhibit 5F-7F, 9F).

At the hearing, the Administrative Law Judge asked the vocational expert about other work that the claimant could perform that exists in the national economy. In posing a hypothetical to the vocational expert, the Administrative Law Judge described a reduced range of medium level work that included postural limitations, moderate situational depression, and avoidance of hazardous machines, heights and extremes of heat and cold (Hearing testimony). Based on this hypothetical question, the vocational expert identified jobs that exist in significant numbers in the national economy, including: hand packer, with 3500 jobs regionally and 800,000 jobs in the national economy; laundry worker, with 2100 jobs in the regional economy and 675,000 jobs in the national economy; and custodian, with 22,000 jobs in the regional economy and 1.4 million jobs in the national economy (Hearing testimony). While the Administrative Law Judge ultimately found that the claimant retained the residual functional capacity for the full range of medium level work, the administrative record supports a finding that jobs exist in significant numbers even with the more limiting factors indicated at the hearing.

In sum, while it was an error to find the claimant "not disabled" at step four of the sequential evaluation process, the ultimate finding of "not disabled" is supported by substantial evidence. Accordingly, based on claimant's age, education, work experience and residual functional capacity, and considering the testimony of the vocational expert at the hearing, the Appeals Council finds the claimant "not disabled" using Medical-Vocational Rule 203.28 as a framework for decision-making.

### FINDING OF THE APPEALS COUNCIL

The Appeals Council has considered the entire record and makes the following findings:

> 1. The claimant has not engaged in substantial gainful activity since March 22, 2007, the application date (20 CFR 416.971 et seq.).
>
> 2. The claimant has the following severe impairments: flat feet, anemia and obesity, severe in combination only (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
>
> 4. The claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 416.967(c).
>
> 5. The claimant has no past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on December 25, 1983, and was a "younger individual" as of her alleged onset date of June 1, 2006.
>
> 7. The claimant has at least a high school degree and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue in this case because the claimant has no past relevant work (20 CFR 416.958).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, Medical-Vocations Rule 203.28 used as a framework supports a finding of "not disabled."
>
> ## DECISION
>
> Based on the application for supplemental security income protectively filed on March 22, 2007, the claimant was not disabled under sections 1602 and 1614(a)(3)(A) of the Social Security Act through the date of the Administrative Law Judge's decision dated April 22, 2009.

(*Id*.) The foregoing decision of the Appeals Council is the final decision of the Commissioner of Social Security before this Court for review. *Compare* 20 C.F.R. § 416.1481 (2011) ("The Appeals Council may deny a party's request for review or it may

decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.") *with* 20 C.F.R. §422.210(a) ("A claimant may obtain judicial review of a decision by an administrative law judge if the Appeals Council has denied the claimant's request for review, or of a decision by the Appeals Council when that is the final decision of the Commissioner.").

## **DISCUSSION**

In supplemental security income cases where the claimant has no past vocationally-relevant work, as here, it is the Commissioner's burden to prove that the claimant is capable of performing work which exists in significant numbers in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The Commissioner's articulation of specific jobs the claimant is capable of performing must be supported by substantial evidence. *Id.* (citation omitted). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into

account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3]

In this case, the plaintiff contends that the Commissioner's decision should be reversed because the ALJ's RFC assessment is not supported by substantial evidence and because the ALJ failed in his duty to develop the record by ordering a psychological consultative examination.

The undersigned will consider these issues together but prior to doing so it is necessary for the Court to set forth the proper analysis for consideration of RFC "issues" raised in cases like the instant one, given the defendant's consistent stance in numerous cases presently pending before this Court that in past cases this Court has conflated the fourth and fifth steps of the sequential evaluation process with respect to who has the burden of developing the evidence necessary to determine residual functional capacity. (*See* Doc. 16, at 8-11.)

The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue,* 400 Fed.Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010), citing 20 C.F.R. § 416.945(a). Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . .

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

impairments.'" *Hanna v. Astrue,* 395 Fed.Appx. 634, 635 (11th Cir. Sept. 9, 2010), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Hanna, supra* (citation omitted); *compare* 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.") *with* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC, a deep-seated principle of Social Security law, *see* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level under § 416.1429 or at the Appeals Council review level under § 416.1467, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."), that this Court has never taken issue with. *See, e.g., Hunington ex rel. Hunington v. Astrue,* No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from her own medical sources. 20 C.F.R. § 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a

9

claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from her impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id.*

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. § 416.945(a)(4).

> (b) *Physical abilities.* When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.
>
> (c) *Mental abilities.* When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.
>
> (d) *Other abilities affected by impairment(s).* Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. § 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v. Astrue,* 2011 WL 5357907, *1 & 2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved,* 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), and *Scott v. Astrue,* 2011 WL 2469832, *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted,* 2011 WL 2461931 (S.D. Ga. Jun. 17, 2011) *with Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 & 923-924 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green, supra*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of

11

the hearing officer's rejection of such opinion,[4] 223 Fed.Appx. at 923-924; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **nothing** in *Green* can be read as suggesting anything contrary to those courts—including this one—that have staked the position that the ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[5] *Compare, e.g.,*

---

[4] An ALJ's articulation of reasons for rejecting a treating source's RFC assessment must, of course, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

[5] In *Green, supra,* such linkage was easily identified since the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work." *Id.* at 924; *see also Hovey v. Astrue*, Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green*, while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

Therefore, decisions, such as *Stephens v. Astrue*, No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require
(Continued)

12

*Saunders v. Astrue,* 2012 WL 997222, *5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying.") *with* 20 C.F.R. § 416.945(b), (c) & (d).

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision. For example, in *Hanna, supra,* the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine

---

that "substantial and tangible evidence" **must—in all cases—include** an RFC or PCE from a physician. *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added). But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence. [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart*, 293 F. Supp.2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .

The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .

The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. **But this conclusion is not clear from the record.** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.

**The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."**

395 Fed.Appx. at 635-636 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a **sufficient rationale to link such evidence to the legal conclusions**

14

**reached**.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)) (emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that

15

the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

Finally, prior to turning full attention to the primary issue raised by claimant, the undersigned need note that even though the plaintiff recognizes in the first few pages of her brief that the Appeals Council entered a corrective decision (Doc. 13, at 2), she proceeds to entirely ignore that decision in making her arguments and, instead, focuses solely upon alleged errors made by the ALJ (*see id*. at 6-10). And while plaintiff's first assignment of error can easily be reviewed by this Court in light of the Appeals Council's decision, since that decision reflects the same RFC assessment, *see Rollinson v. Astrue*, 2010 WL 1737690, *2 n.2 (E.D.N.C. Apr. 9, 2010) ("Throughout his memorandum, Claimant alleges errors by the ALJ. However, as explained above, the Appeals Council's decision is the Commissioner's final decision and is accordingly the decision before this Court for judicial review."), *report & recommendation adopted,* 2010 WL 1737644 (E.D.N.C. Apr. 29, 2010), the same cannot be said of plaintiff's second assignment of error. Indeed, in arguing that the ALJ failed to develop the record by not ordering a consultative psychological examination plaintiff stressed that the ALJ noted that her depression was severe when considered in combination with her other impairments. (*See* Doc. 13, at 8-9.) As set forth above, however, the decision before this Court for review is the Appeals Council's decision and the plaintiff nowhere in her brief—and having waived oral argument—takes issue with the finding by the Appeals Council that she has no severe medically determinable mental impairment (*see* Tr. 5); therefore, this Court need reject any suggestion that the ALJ erred in failing to order a

16

consultative psychological examination. *Cf. Beattie v. Astrue,* 2009 WL 4510117, *6 (M.D. Fla. Dec. 1, 2009) ("The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision. As discussed above, the evidence in this case failed to establish that Plaintiff had a severe mental impairment. Because the record was sufficient for the ALJ to make an informed decision, there was no need for the ALJ to order a consultative psychological examination." (internal footnote omitted).)[6]

Turning to plaintiff's lead issue (*see* Doc. 13, at 6-8), the Court considers whether the Commissioner's decision denying benefits should be reversed on the basis that the RFC assessment is not supported by substantial evidence. Johnson more specifically argues that "Dr. West's assertion that he 'really see[s] no disabling factors,' cannot be substituted for an appropriate physical capacity evaluation[,]" (Doc. 13, at 6) and because the Commissioner's "RFC assessment is unsupported by the evaluation of a treating or examining physician[,]" a remand is warranted for "further development of the record on which to base an appropriate RFC finding." (*Id*. at 8.) Based upon the previous legal analysis set forth above, the Court need reject plaintiff's argument that the Commissioner cannot render an RFC that is not supported by the medical opinion of a treating or examining medical source. Through its decision in *Green, supra*, the Eleventh Circuit has expressly rejected this argument. *See* 223 Fed.Appx. at 923-924.

---

[6] To the extent necessary, the undersigned finds that the Appeals Council, having found no severe mental impairment, was under no duty to order a consultative psychological examination. *See Beattie, supra.*

Indeed, the Eleventh Circuit indicated in *Green* that where an ALJ and/or Appeals Council articulates specific reasons, supported by substantial evidence, for failing to give the RFC opinion of a treating physician controlling weight, and the Commissioner properly links the remaining evidence of record (after such rejection) to the RFC assessment, such assessment can be found to be supported by substantial evidence. *See id.*

Because there was no rejection of a treating physician's RFC assessment in this case, the undersigned need only consider whether the Appeals Council linked the RFC assessment in this case to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work. The following analysis by the Appeals Council provides the required linkage:

> [A]lthough the decision on its face does not appear to provide a "function by function" assessment of claimant's residual functional capacity, by finding that she could perform the full range of medium work and citing 20 CFR 416.967(c), which clearly defines that term, the Administrative Law Judge satisfied the requirements of Social Security Ruling 96-8p. Furthermore, the evidence of record does not support limitations greater than those found by the Administrative Law Judge. While the record shows that claimant has sought medical treatment for a variety of health issues, clinical findings have generally been unremarkable (Exhibit 1F, 8F, 10F). As noted above, the record does not establish that claimant has a medically determinable mental impairment. In terms of her flat feet, the current record does not show that claimant was ever seen by a podiatrist. The only record regarding this alleged impairment is from Stephen West, M.D., a consultative examiner who evaluated claimant in August 2007 and stated that she had 5/5 strength, good range of motion, negative straight leg raise tests, could do heel toe maneuvers, fully squat and walk with a normal gait (Exhibit 3F). Based on his examination, Dr. West indicated that he did not see any "disabling factors" and did not recommend any functional limitations despite finding planter (sic) fasciitis bilaterally, hypertension and migraine headaches (Exhibit 3F/2). Finally, while the evidence reflects that claimant has sought treatment for abdominal pain,

> has been prescribed medications to treat nausea and acid reflux, and has been found to have irritable bowel syndrome, they do not show that claimant has significant limitations as a result of these conditions (Exhibit 5F-7F, 9F).

(Tr. 5-6.) As the foregoing summary by the Appeals Council establishes, this case is very similar to *Green* in that the documentary evidence of record consists of nominal, indeed unremarkable, clinical findings. (*Compare* Tr. 5-6 *with* Tr. 169-170, 179-231, & 259-373.) At best, the evidence establishes flat feet bilaterally (causing plantar fasciitis) but plantar flexion and dorsiflexion bilaterally is 5/5 and gait is normal (Tr. 170); recurrent bouts of irritable bowel syndrome which respond fully to medications (Tr. 180-200, 213, 219-227, 287-291 & 332-352); some chiropractic treatment for cervical and low back complaints (Tr. 232-258) without significant clinical findings (*compare* Tr. 232 (cervical x-rays unremarkable) *with* Tr. 238-239); and, as of the March 12, 2009 hearing date, plaintiff experiences no significant physical pain on a regular basis (Tr. 33-34).[7] The RFC assessment that plaintiff can perform the full range of medium work,[8] including those medium jobs identified by the vocational expert during the hearing (*see* Tr. 6-7; *compare*

---

[7] Plaintiff's argument that the Commissioner's RFC assessment fails to adequately consider the limitations caused by her irritable bowel syndrome and back pain (Doc. 13, at 8), is belied by the decision of the Appeals Council, which correctly references the chiropractic treatment records as reflecting unremarkable clinical findings (*compare* Tr. 5-6 (citing Exhibit 8F) *with* Tr. 232-258 (transcript pages comprising Exhibit 8F)) and notes, also correctly, that the evidence of record regarding plaintiff's irritable bowel syndrome reflects no "significant limitations as a result" of that condition (Tr. 6). This argument is also undercut by plaintiff's hearing testimony that, as of the hearing date, she was having no significant physical pain on a regular basis. (Tr. 33-34.)

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

*id. with* Tr. 40), is, contrary to plaintiff's position, supported by substantial evidence. Accordingly, the Commissioner's fifth-step denial of benefits is due to be affirmed.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 18th day of April, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**